ISMAIL J. RAMSEY (CABN 189820)
United States Attorney

THOMAS A. COLTHURST (CABN 99493)
Chief, Criminal Division

BENJAMIN KINGSLEY (CABN 314192)
Assistant United States Attorney

    1301 Clay Street, Suite 340S
    Oakland, California 94612
    Telephone: (510) 637-3680
    FAX: (510) 637-3724
    benjamin.kingsley@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) NO. CR 22-457 SI |
| Plaintiff, | ) |
| v. | ) **UNITED STATES'** |
| | ) **SENTENCING MEMORANDUM** |
| WALTER DAWYDIAK, | ) Sentencing Date: August 18, 2023 |
| Defendant. | ) Sentencing Time: 11:00 a.m. |

## INTRODUCTION

On February 10, 2022, defendant pleaded guilty to the two counts of the Information, charging him with (1) mail fraud, in violation of 18 U.S.C. § 1341, and (2) tax evasion, in violation of 26 U.S.C. § 7201. Dkt. 11. That same day, the parties entered into a plea agreement pursuant to Rule 11(c)(1)(B). Dkt. 10. In the plea agreement, the parties agreed to a Sentencing Guidelines Offense Level of 20 and agreed that the appropriate sentence in this case is six months of custody. Dkt. 10 at 6. The parties reached no agreement regarding defendant's criminal history category.

U.S. Probation has recommended that defendant is an Offense Level of 20 and is in Criminal History Category I, resulting in a Guidelines range of 33 to 41 months of imprisonment. Probation has concurred with the six-month recommendation in the plea, and recommends a sentence of six months of

**SENTENCING MEMORANDUM**

imprisonment, followed by three years of supervised release, restitution, and no fine.

The government thus joins Probation's recommendation, and requests a sentence of six months in custody, three years of supervised release, a $100 special assessment, and restitution.

## DISCUSSION

### A. Offense Conduct

For decades, defendant owned and ran Cars Dawydiak, Inc. ("Cars Dawydiak"), a high-end car dealership in San Francisco. PSR ¶ 6. As part of his business, defendant both defrauded consignment sellers of luxury cars and evaded his payroll taxes with the IRS by making under-the-table cash payments to his employees.

As the main part of its business, Cars Dawydiak sold luxury cars on consignment, agreeing with owners of such vehicles that Cars Dawydiak would sell their cars for them, keep a portion of the sale as commission (as well as bill for any other costs and fees), and pay the remaining amount to the owner. PSR ¶ 7. These individuals were Cars Dawydiak's consignment sellers. PSR ¶ 7. In advance of selling a car for a consignment seller, Cars Dawydiak would enter into a consignment sales agreement, in which the seller would agree to consign his or her vehicle to Cars Dawydiak for sale. PSR ¶ 7. As part of the agreements, the seller and Cars Dawydiak would agree on terms such as a minimum sales price as well as a commission amount or a way of calculating (i.e., a percentage) the commission amount. PSR ¶ 7. Defendant was the main person responsible for negotiating these terms with sellers. PSR ¶ 7.

At some point, defendant began defrauding his consignment sellers by lying to them about the price for which their vehicles had sold—and thus understating the amount that the sellers were due from the sale, all while keeping the difference for the business. PSR ¶ 8. Though it is not certain when the scheme started, defendant has admitted it ran from at least January 2014 through September 2019, when he found out about the government's investigation in this case. PSR ¶ 10.

Because Cars Dawydiak kept poor, and in many cases false, business records of these transactions—and because defendant's discussions with consignment sellers were often not memorialized—it is impossible to determine with certainty exactly how many victims were defrauded and for how much. PSR ¶ 10. However, defendant has admitted he did it regularly, and using forensic

**SENTENCING MEMORANDUM**

financial analysis and a review of the records that did exist, the parties have worked to make a reasonable reconstruction of the loss amounts and the individual victims of the scheme. PSR ¶ 10. The parties agreed that, for Sentencing Guidelines purposes, an estimate of loss of greater than $550,000 was appropriate, and that there were more than 100 and less than 500 victims of his scheme.

Separately, defendant also ran a scheme to evade payroll taxes. From at least 2016 through 2019, he made under-the-table cash payments for overtime work to employees in the dealership and body shop to avoid payroll taxes. PSR ¶ 11. He kept a separate set of books to track those unreported overtime cash payments, and sent an employee to the bank to withdraw cash payments at payroll time. PSR ¶ 11. Defendant caused Cars Dawydiak to file false Form 941s, Employer's Quarterly Federal Tax Returns, that did not report these payments. PSR ¶ 11. As a result, Cars Dawydiak filed false quarterly tax forms through that time period, with a total amount of unreported payments of $252,288 and a total tax loss of $38,600.10. PSR ¶ 11.

### B. Guideline Calculations

The government agrees with Probation's calculation of the Guidelines, which were agreed upon by the parties in the plea agreement:

Group 1: Mail Fraud

| | | |
|---|---|---:|
| a. | Base Offense Level, U.S.S.G. § 2B1.1(a)(1) | 7 |
| b. | Loss amount > $550,000, U.S.S.G. § 2B1.1(b)(1)(H) | +14 |
| c. | Victims > 10, U.S.S.G. § 2B1.1(b)(2)(A)(i) | +2 |
| d. | Adjusted offense level | 23 |

Group 2: Tax Evasion

| | | |
|---|---|---:|
| a. | Base Offense Level, Tax Loss > $15,000 U.S.S.G. § 2T1.1(a)(1), 2T4.1(D) | 12 |
| b. | Adjusted offense level | 12 |

Grouping and adjustments

| | | |
|---|---|---:|
| a. | Group 1 adjusted offense level | 23 |
| b. | Multiple count adjustment, U.S.S.G. § 3D1.4 | 0 |
| c. | Acceptance of Responsibility, § 3E1.1 | -3 |

**SENTENCING MEMORANDUM**

3

|   |   |   |   |
|---|---|---|---|
| 1 | | d.    Total adjusted offense level | 20 |

The fraud loss amount is above $550,000, with more than 10 victims, resulting in a fraud offense level of 23. The total tax loss was greater than $15,000 but less than $40,000, resulting in an offense level from the tax table of 12, which is too low to affect the offense level under the grouping rules. Given that defendant's Total Adjusted Offense Level is 20, and his Criminal History Category is I, his Guidelines range is 33 to 41 months of imprisonment.

### C.    Restitution Process and Amount

Though the parties were able to make a reasonable estimate of loss for sentencing purposes in the large ranges required by the Sentencing Guidelines, the parties undertook a different process for calculating restitution. In order to be fair to defendant's victims, and because an exact loss calculation would be difficult to make for any particular victim as there are generally not records of the sales price that defendant communicated to the victims for their vehicles, the parties agreed instead on an average restitution of amount per victim of $1,755. The parties also identified 277 individuals that were likely victims of the scheme, and notified each victim via the Department of Justice's victim notification system. Each victim was notified of that amount and given the opportunity to accept it, opt out of that amount and submit documentation and/or have the parties try to best determine their actual individual restitution amount, or opt out of any restitution entirely. The vast majority accepted that amount, with a small number opting for one of the other options. The parties are still waiting on three victims who may want to opt out of restitution. Pending the decision of those individuals, the total restitution amount for the fraud scheme is $508,529.00, with a final calculation and specific amounts for each victim to be provided at the time of sentencing.

Separately, the restitution amount for the tax scheme is $38,600.10 to the IRS.

### D.    A Sentence of Six Months Is Sufficient but Not Greater than Necessary to Comply with 18 U.S.C. § 3553(a).

The parties agreed on a six-month prison sentence in the plea agreement. Probation has joined that recommendation.

Defendant orchestrated a scheme to defraud hundreds of his customers over a period of years. It

**SENTENCING MEMORANDUM**

4

was a classic consumer fraud—defendant took relatively small amounts of money from a large number of people, over a long period of time. It appears none of his victims really knew what had happened (though perhaps some suspected something) until the government's investigation uncovered the fraud. Defendant's financial condition shows that he is a wealthy man, and the amounts of he took from his victims, or failed to pay to the IRS, are relatively small in the scheme of his finances. Whether he defrauded his customers and cheated on his taxes because he was motivated by greed or something else, he kept doing it for years because no one stopped him. A prison sentence is important in this case, to promote respect for the law and signal to other businesses that ripping off their customers comes with serious consequences.

However, six months is a sufficient length of time for that sentence. Defendant has cooperated extensively with the government to help piece together his conduct, has demonstrated an extraordinary level of acceptance of responsibility, and has worked hard to identify and make restitution to his victims. Within days of defendant finding out about the government's investigation, defendant's attorneys contacted the government. Defendant quickly indicated that he wanted to make amends, and that he would work with the government to identify his victims for restitution purposes, and determine how much restitution he must pay. That project was complicated and time-consuming, and was entirely voluntary on the part of defendant. The results of that work identified the defendant's victims for purposes of restitution and established an estimated loss amount on a per victim basis. Based on that information, defendant agreed to a plea agreement with a set restitution amount of $1,755 offered to each victim. This is an unusual resolution, but very well suited in this case, as it relieved his victims from the burden of having to prove how much they had lost in events that happened years ago (and for which there was not likely to be a written record). Defendant has also already set aside funds with his attorneys to make full restitution to his victims. The government believes defendant's contrition is fully sincere, given that he has backed it up with work for the last several years.

This is not a typical outcome of a fraud case. Many fraud defendants deny that they defrauded their victims, minimize their conduct through the moment of their sentencing, and/or never make any effort to make restitution. Defendant has done the opposite. For these reasons, a sentence of six months

**SENTENCING MEMORANDUM**

appropriately balances the general needs of deterrence and promoting respect for the law with defendant's extraordinary conduct after he was caught.

## CONCLUSION

With full consideration of all the sentencing factors set forth in 18 U.S.C. § 3553(a), the United States respectfully requests that the Court impose a sentence of six months in custody, three years of supervised release, a $100 special assessment, and $508,529 in restitution (pending final determination) to the fraud victims and $38,600.10 to the IRS.

DATED: August 11, 2023                                      Respectfully submitted,

ISMAIL J. RAMSEY
United States Attorney

_____/s/_____
BENJAMIN KINGSLEY
Assistant United States Attorney

**SENTENCING MEMORANDUM**

6